# No. 13-5061

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――

### SABINA LOVING; ELMER KILIAN; and JOHN GAMBINO,
#### Plaintiffs-Appellees

#### v.

### UNITED STATES OF AMERICA; INTERNAL REVENUE
### SERVICE; and DOUGLAS H. SHULMAN, (FORMER)
### COMMISSIONER OF INTERNAL REVENUE
#### Defendants-Appellants

―――――――――――

### ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES
### DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

―――――――――――

### BRIEF FOR THE APPELLANTS

―――――――――――

KATHRYN KENEALLY
  *Assistant Attorney General*

TAMARA W. ASHFORD
  *Principal Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG          (202) 514-3361
RICHARD FARBER                 (202) 514-2959
PATRICK J. URDA                (202) 307-0201
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel*:
RONALD C. MACHEN JR.
  *United States Attorney*

9784119.1

# CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

A. *Parties and Amici.*  The parties in the District Court and in this Court are Sabina Loving, Elmer Kilian, John Gambino, the United States of America, the Internal Revenue Service, and the Commissioner of Internal Revenue.  The Government understands that the National Consumer Law Center and National Community Tax Coalition intend to participate as *amicus curiae* in support of the Government.

B. *Rulings under Review.*  The rulings under review are the judgment of the District Court (Judge James E. Boasberg) dated January 19, 2013, the accompanying memorandum opinion of the same date, and the order modifying the court's injunction, which was entered on February 1, 2013.

C. *Related Cases.*  To the best of their knowledge, counsel for the Government are not aware of any previous or pending related cases in this Court.

# TABLE OF CONTENTS

Certificate of parties, rulings and related cases ....................................i

Table of contents.................................................................................ii

Table of authorities .......................................................................... iii

Statement of jurisdiction..................................................................... 1

Statement of the issue.........................................................................3

Statutes and regulations ......................................................................3

Statement of the case ..........................................................................3

Statement of the facts ..........................................................................4

    A.    Return Preparer Review ...........................................5

    B.    Regulation of tax-return preparers ..................................11

    C.    The District Court proceedings ............................15

Summary of argument ......................................................................21

Argument ..........................................................................................24

    The District Court erred as a matter of law in holding
    that 31 U.S.C. § 330(a)(1) unambiguously foreclosed
    the Secretary of the Treasury from regulating the
    practice of tax-return preparers, and, accordingly,
    erred in declaring the tax-return preparer regulations
    invalid and enjoining their enforcement...............................24

    Standard of review ...............................................24

    A.    Introduction.................................................25

    B.    The District Court erred in holding that the tax-
    return preparer regulations are invalid ......................28

        1.    The tax-return preparer regulations satisfy
        *Chevron* step one.................................30

            a.    The term "practice of representatives
            of persons before the Department of
            the Treasury" is ambiguous ......................30

b.   The District Court erroneously held
that other statutory provisions cured
the inherent ambiguity of the term
"practice of representatives" in 31
U.S.C. § 330(a)(1).........................................35

2.   The tax-return preparer regulations are a
reasonable construction of the authority
granted to the Secretary by 31 U.S.C.
§ 330(a)(1) that satisfies *Chevron* step two ........45

Conclusion....................................................................47
Certificate of compliance ..........................................48
Certificate of service ................................................49
Addendum ..................................................................50

## TABLE OF AUTHORITIES

**Cases:**

*American Federation of Labor and Congress of
Industrial Organizations v. Federal Election
Commission*, 333 F.3d 168 (D.C. Cir. 2003)....................33, 45
*Arkansas Dairy Cooperative Association, Inc. v. United States
Department of Agriculture*, 573 F.3d 815
(D.C. Cir. 2009)................................................................24-25
*Artis v. Bernanke*, 630 F.3d 1031 (D.C. Cir. 2011).........................30
*Asiana Airlines  v. Federal Aviation Administration*,
134 F.3d 393 (D.C. Cir. 1998) ................................................39
*Catawba County, North Carolina v. Environmental
Protection Agency*, 571 F.3d 20 (D.C. Cir. 2009)...................32
*      *Chevron, U.S.A., Inc. v. Natural Resources Defense
Council, Inc.*, 467 U.S. 837 (1984) .................21, 24, 29-31, 45
*City of Tacoma v. Federal Energy Regulatory Commission*,
331 F.3d 106 (D.C. Cir. 2003) ................................................32
*Connecticut National Bank v. Germain*,
503 U.S. 249 (1992) ........................................................40-41

\* Authorities upon which we chiefly rely are marked with asterisks.

## Cases (continued):                                    Page(s)

*Davis v. Michigan Department of Treasury*,
    489 U.S. 803 (1989) ................................................................32

*District of Columbia v. Air Florida, Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ............................................30

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)..............24

*Judicial Watch v. Federal Bureau of Investigation*,
    522 F.3d 364 (D.C. Cir. 2008) ..............................................24

*Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012) ..........................25

*Koon v. United States*, 518 U.S. 81 (1996) ....................................25

*Laurel Baye Healthcare of Lake Lanier, Inc. v. National
    Labor Relations Board*, 564 F.3d 469 (D.C. Cir. 2009) ...38-39

\*    *Mayo Foundation for Medical Education and Research
    v. United States*, --- U.S. ---, 131 S. Ct. 704 (2011) .........29, 45

\*    *National Cable & Telecommunications Association
        v. Brand X Internet Services*,
        545 U.S. 967 (2005) .............................................29- 31, 33, 45

*Petit v. United States Department of Education*,
    675 F.3d 769 (D.C. Cir. 2011) ..........................................30, 45

*Roberts v. Sea-Land Services, Inc.*,
    --- U.S. ---, 132 S. Ct. 1350 (2012)..........................................32

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) ..........41

*United States v. Nofziger*, 878 F.2d 442 (D.C. Cir. 1989) ..............33

*Village of Barrington, Illinois v. Surface Transportation
    Board*, 636 F.3d 650 (D.C. Cir. 2011)..............................32, 45

*Wolf Run Mining Co. v. Federal Mine Safety
    and Health Review Commission*,
    659 F.3d 1197 (D.C. Cir. 2011) ............................................32

## Statutes:

5 U.S.C.:
    § 702...................................................................................2
    § 703...................................................................................2
    § 704...................................................................................2
    § 705...................................................................................2

\* Authorities upon which we chiefly rely are marked with asterisks.

**Statutes (continued):**                                                                 **Page(s)**

§ 706.............................................................................................2

Internal Revenue Code (26 U.S.C.):
§ 6103.......................................................................................41
§ 6103(a)...................................................................................41
§ 6103(b)(2)(A).........................................................................41
§ 6103(k)(5)..........................................................................40-42
§ 6109........................................................................................9
§ 6109(a)(4)..............................................................................11
§ 6694................................................................................40, 42
§ 6695................................................................................40, 42
§ 6713......................................................................................40
§ 7216................................................................................40, 42
* § 7407 ........................................................................18-19, 23, 42-43
* § 7408 ..........................................................................19, 43-44
§ 7408(c)(2)...............................................................................44
§ 7701(a)(36)..............................................................................5

28 U.S.C.:
§ 1291........................................................................................2
§ 1331........................................................................................2
§ 2107(b)....................................................................................2
§ 2201........................................................................................2
§ 2202........................................................................................2

31 U.S.C.:
§ 321(b)(1)................................................................................25
§ 330.....................................................19, 22, 35, 40-41, 43-44
§ 330(a) ............................. 3, 9-10, 14-15, 17, 25-26, 31-32, 46
* § 330(a)(1).................3, 15-18, 21, 23, 24, 26, 29, 33, 35-40, 45
* § 330(a)(2).............................................................................34, 36
* § 330(a)(2)(C)....................................................22-23, 34, 38-39, 46
§ 330(a)(2)(D)...............................................................17, 22, 36-38
§ 330(b) ............................................... 18-19, 23, 39-40, 42-44

* Authorities upon which we chiefly rely are marked with asterisks.

9784119.1

## Rules and Regulations:                                    Page(s)

Federal Rule of Appellate Procedure 4(a)(1)(B) ...............................2

26 C.F.R.:
 § 1.6109-2(d) ..................................................................14, 28

31 C.F.R.:
 § 10.0.........................................................................12, 26
 § 10.2.............................................................................27
 § 10.2(a)(4) ..............................................................12, 26-27
 § 10.2(a)(8) .......................................................................5
 § 10.3(f)(1) .......................................................................12
 § 10.3(f)(2) ..................................................................13, 27
 § 10.3(f)(3) ..................................................................13, 27
 § 10.4(c).....................................................................12-13, 28
 § 10.5(d) ...................................................................13-14, 28
 § 10.6(e)(3) ...................................................................14,28
 § 10.72..........................................................................42
 § 10.80..........................................................................42

## Miscellaneous:

76 Fed. Reg. 32,286 (June 3, 2011).....................3, 12, 13, 27, 46-47

IRS Notice 2011-6, 2011-3 I.R.B. 315 ............................................14

I.R.S. Publication No. 8432 (Rev. 12-2009), *available at*
 http://www.irs.gov/pub/irs-pdf/p4832.pdf...........................5-13

National Taxpayer Advocate, FY 2002, Annual Report
 to Congress, *available at* http://www.irs.gov/pub/irs-
 utl/nta_2002_annual_rpt.pdf.................................................6

\* Authorities upon which we chiefly rely are marked with asterisks.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

### No. 13-5061

### SABINA LOVING; ELMER KILIAN; and JOHN GAMBINO,
### Plaintiffs-Appellees

### v.

### UNITED STATES OF AMERICA; INTERNAL REVENUE
### SERVICE; and DOUGLAS H. SHULMAN, (FORMER)
### COMMISSIONER OF INTERNAL REVENUE,
### Defendants-Appellants

—————————————

## ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES
## DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

—————————————

## BRIEF FOR THE APPELLANTS

—————————————

## STATEMENT OF JURISDICTION

The United States of America, the Internal Revenue Service, and

the Commissioner of Internal Revenue (collectively, the Government)

take this appeal from the judgment of the District Court for the District

of Columbia (Judge James E. Boasberg), which invalidated, and

enjoined the enforcement of, regulations issued by the Secretary of the

9784119.1

-2-

Treasury to regulate the practice of individuals who prepare federal tax returns for compensation.  (JA 9.)[1]

Sabina Loving, Elmer Kilian, and John Gambino (collectively, plaintiffs) brought this suit for declaratory and injunctive relief against the enforcement of the regulations.  (Doc. 1.)  They invoked the District Court's jurisdiction under 28 U.S.C. § 1331, asserting that the District Court had authority to grant the requested relief under 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 702-06.  (Doc. 1 at ¶ 2.)  In an order entered on January 18, 2013, the District Court granted plaintiffs a permanent injunction precluding the IRS from enforcing the regulations (JA 9), which the court modified on February 1, 2013 (JA 38).   On February 20, 2013, the Government filed a notice of appeal (JA 93-94), which was timely under 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B).  This Court's jurisdiction rests upon 28 U.S.C. § 1291.

---

[1]  "Doc." references are to documents contained in the record, as numbered by the Clerk of the District Court.  "JA" references are to the documents contained in the Joint Appendix filed with this brief.

## STATEMENT OF THE ISSUE

Congress has granted the Secretary of the Treasury broad authority to "regulate the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330(a)(1). The issue on appeal is whether the District Court erred as a matter of law in holding that 31 U.S.C. § 330(a)(1) does not authorize the Secretary of Treasury to regulate the practice of representatives who prepare federal tax returns on behalf of other persons for filing with, and review by, the Internal Revenue Service.

## STATUTES AND REGULATIONS

The most apposite statutory authority is 31 U.S.C. § 330, and the most pertinent regulations are 31 C.F.R. §§ 10.2 – 10.6, which are set forth in pertinent part in an Addendum to this brief.

## STATEMENT OF THE CASE

In 2011, the Department of the Treasury issued regulations establishing minimum practice requirements for individuals who are paid to prepare tax returns for others for submission to the Internal Revenue Service. *See* 76 Fed. Reg. 32,286 (June 3, 2011). Plaintiffs, who are paid tax-return preparers, brought this suit to have the

regulations declared invalid and to enjoin their enforcement. (Doc. 1.)
The parties each moved for summary judgment. (Docs. 12-13.) The
District Court granted summary judgment to plaintiffs, declaring the
regulations invalid and enjoining their enforcement. (JA 9.) The
Government moved for a stay of the injunction pending appeal
(Doc. 23), but its motion was denied by the District Court (JA 32-38).
The court, however, modified the injunction to clarify its scope. (JA 38.)
The Government then filed this appeal (JA 93-94), and moved this
Court for a stay pending appeal, which was denied by this Court.

## STATEMENT OF THE FACTS

This case arises out of an initiative by the Department of the
Treasury to improve the service provided by the tax-return-preparation
industry, to protect taxpayers who use such services, and to enhance
tax administration by reducing the considerable lost tax revenues that
are attributable to the significant number of tax-return preparers who
are incompetent and/or unscrupulous. To achieve these goals, the
Secretary of the Treasury issued regulations setting forth, *inter alia*,
minimum competency, continuing education, and ethics requirements

for tax-return preparers[2] other than attorneys, certified public accountants, enrolled agents, and enrolled retirement plan agents.

## A.     Return Preparer Review

In June 2009, the IRS launched a public review of the tax-return-preparation industry.  *See* I.R.S. Pub. No. 4832 (Rev. 12-2009) at 1, *available at* http://www.irs.gov/pub/irs-pdf/p4832.pdf.  This industry has assumed a central position in tax administration: "[f]or 2007 and 2008, over 80 percent of all federal individual income tax returns were prepared by paid tax return preparers or by taxpayers using consumer tax preparation software."  *Id.*  At the time the IRS began its review, it estimated that hundreds of thousands of individuals prepared tax returns for compensation, and noted that a "large share of tax return preparers do not pass any government or professionally mandated competency requirements before they prepare a federal tax return."  *Id.*

---

[2] "The term 'tax return preparer' means any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by this title or any claim for refund of tax imposed by this title.  For purposes of the preceding sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund."  I.R.C. § 7701(a)(36).  *See also* 31 C.F.R. § 10.2(a)(8).

During the years prior to the IRS's review, serious concerns were raised about the effect of the lack of oversight of such tax-return preparers on taxpayers and tax administration. Beginning in 2002, the National Taxpayer Advocate, in her annual report to Congress, pointed out the need to "strengthen[ ] the professionalism of those who prepare tax returns for compensation," and suggested "a framework that provides for registration, testing, certification, continuing education, and consumer education." IRS Pub. No. 4832 at 22. *See also* National Taxpayer Advocate, FY 2002 Annual Report to Congress, at 216-30, *available at* http://www.irs.gov/pub/irs-utl/nta_2002_annual_rpt.pdf. Similarly, beginning in 2006, the Taxpayer Advocacy Panel recommended the licensing of paid tax-return preparers, noting "that taxpayers are hurt when their returns are not prepared accurately." *Id.* at 23. In 2008, the Internal Revenue Service Advisory Council "recommended that the IRS develop a system to identify all paid tax return preparers through the use of a unique identification number," to lead to more accurately prepared tax returns and improved outreach and education efforts. *Id.* at 24.

In 2006 and 2008, the Government Accountability Office (GAO) and the Treasury Inspector General for Tax Administration (TIGTA) each conducted reviews of tax-return preparers, with employees of the respective agencies posing as taxpayers to evaluate the services provided.  *See* IRS Pub. No. 4832 at 13.  "The GAO study targeted 19 outlets of chain commercial tax return preparation firms," *id.*, and found that all nineteen made errors on the tax returns that they prepared, *id.* at 13-14.  For its part, TIGTA targeted 28 tax-return preparers, both those employed by chain tax-return preparation firms, and those who worked at (or owned) small or independent firms.  *Id.* at 14-16.  Most of the tax-return preparers asked probing questions, but the "use of probing questions or an information worksheet was not an indication, however, of the accuracy of the resulting return."  *Id.* at 15.  In fact, 17 of the 28 returns "did not show the correct amount of tax owed or refund due on the returns they prepared."  *Id.*

The IRS's own review of the industry resulted in I.R.S. Pub. No. 4832, *available at* http://www.irs.gov/pub/irs-pdf/p4832.pdf, which summarized the findings of the review and contained recommendations for future actions.  The IRS had two objectives in conducting this

review: "1) Strengthen partnerships with tax practitioners, tax return preparers, and other third parties in order to ensure effective tax administration; and 2) Ensure that all tax practitioners, tax return preparers, and other third parties in the tax system adhere to professional standards and follow the law."  IRS Pub. No. 4832 at 1.

As part of the IRS's review, three public forums were held and more than 500 individuals and groups offered written comments.  IRS Pub. No. 4832 at 32.  "Through the public comment process, commenters overwhelmingly expressed support for efforts to increase the oversight of paid tax return preparers, particularly for those who are not attorneys, certified public accountants, or other individuals authorized to practice before the IRS."  *Id.* at 2.  The publication noted that "90 percent of the individuals who commented on education and testing favor minimum education or testing requirements for paid tax return preparers."  *Id.*  The publication also reported that "98 percent of the individuals who commented on quality and ethics favor establishment of quality and ethics standards for paid tax return preparers."  *Id.*

The IRS concluded that enhanced oversight of tax-return preparers was necessary, and determined that it could draw on pre-existing authority to achieve this end:

> The IRS believes that increased oversight of paid tax return preparers does not require additional legislation.  As discussed more fully below, the IRS' intention is to require paid tax return preparers to register with the IRS through the issuance of regulations under section 6109 of the Internal Revenue Code.  Further, the IRS considers the preparation of a tax return for compensation as a form of representation before the agency.  Thus, the IRS intends to amend the regulations under 31 U.S.C. 330 to clarify that any person preparing a tax return for compensation is practicing before the agency and, therefore, must demonstrate good character, good reputation, and the necessary qualifications and competency to advise and assist other persons in the preparation of their federal tax returns.

IRS Pub. No. 4832 at 33.

More specifically, the IRS recommended, based on the authority in 31 U.S.C. § 330, the implementation of competency testing, continuing education requirements, and ethics standards.[3]  *See* I.R.S. Pub.

---

[3]  The Secretary of the Treasury has authority to "regulate the practice of representatives of persons before the Department of the Treasury," and before admitting a representative to practice, may require the representative to demonstrate: (i) "good character;" (ii) "good reputation;" (iii) "necessary qualifications to enable the representative to provide to persons valuable service;" and (iv) "competency to advise

(continued…)

No. 4832, at 34-37. It proposed the establishment of competency testing and continuing education requirements for tax-return preparers who are not attorneys, certified public accountants, enrolled agents, or enrolled retirement plan agents. *See id*. at 34.[4] The IRS further recommended that tax-return preparers be required to complete 15 hours of continuing professional education annually, because of "the complexity of the tax laws and the frequent changes made to the Internal Revenue Code and the rules and regulations implemented to assist in the administration of the Code." *Id.* The IRS also agreed "with the overwhelming majority of commenters that tax return preparers must be covered by a standard of ethics." *Id.* at 37.

---

(…continued)
and assist persons in presenting their cases." 31 U.S.C. § 330(a) (reproduced at pp. 25-26, *infra*).

[4] In Publication 4832, the IRS expressly noted that attorneys, certified public accountants, enrolled agents and other individuals authorized to practice before the IRS who prepare returns were already subject to Federal oversight under 31 U.S.C. § 330, which governs practice before the Department of the Treasury, and such professionals "must adhere to the more stringent standards of practice promulgated in Part 10 of Title 31 of the Code of Federal Regulations . . . ." *See* I.R.S. Pub. No. 4832, at 2.

-11-

The IRS also recommended mandatory registration of all tax-return preparers. The IRS explained that all "tax return preparers are required to furnish an identifying number on any return that they are required to sign as a paid tax return preparer."[5] I.R.S. Pub. No. 4832, at 33. The IRS noted that, at that time, a tax-return preparer could provide either a social security number or a preparer tax identification number (PTIN) that the IRS issues. *Id.* The IRS recommended requiring all tax-return preparers to register and obtain a PTIN from the IRS, which would improve the IRS's efforts to collect data and monitor misconduct, and "help the IRS provide better service to the tax return preparer community and taxpayers generally." *Id.*

## B.    Regulation of tax-return preparers

The IRS thereafter issued proposed regulations governing tax-return preparers consistent with the recommendations set forth in I.R.S. Pub. No. 4832. After an opportunity for public comment, the IRS

---

[5] "Any return or claim for refund prepared by a tax return preparer shall bear such identifying number for securing proper identification of such preparer, his employer, or both, as may be prescribed." I.R.C. § 6109(a)(4).

-12-

issued final regulations, which took effect in August 2011. *See* 76 Fed.

Reg. at 32,287. "The primary benefit anticipated from these regulations

is that they will improve the accuracy, completeness, and timeliness of

tax returns prepared by tax return preparers." *Id*. at 32,294. These

regulations amended 31 C.F.R. § 10.0, *et seq.*, which, *inter alia*, set forth

"rules relating to the authority to practice before the Internal Revenue

Service" and "the duties and restrictions relating to such practice." 31

C.F.R. 10.0. This regulation defined "practice before the Internal

Revenue Service" to –

> comprehend[ ] all matters connected with a presentation to
> the Internal Revenue Service or any of its officers or
> employees relating to a taxpayer's rights, privileges, or
> liabilities under laws or regulations administered by the
> Internal Revenue Service. Such presentations include, but
> are not limited to, preparing documents; filing documents
> . . . .

31 C.F.R. § 10.2(a)(4).

Consistent with I.R.S. Pub. No. 4832, the revised regulations

specify that "any individual who is designated as a registered tax return

preparer pursuant to § 10.4(c) of this part. . . may practice before the

Internal Revenue Service." 31 C.F.R. § 10.3(f)(1). "Practice as a

registered tax return preparer is limited to preparing and signing tax

returns and claims for refund, and other documents for submission to the Internal Revenue Service."   31 C.F.R. § 10.3(f)(2).  A registered tax-return preparer may also in certain circumstances represent a taxpayer during an audit, if the registered tax-return preparer signed the tax return or claim for refund that is under examination.  31 C.F.R. § 10.3(f)(3).

As recommended by I.R.S. Pub. No. 4832, the regulations also set forth competency and ethics requirements.   *See* 76 Fed. Reg. at 32,287. To become a registered tax-return preparer, 31 C.F.R. § 10.4(c) requires that an applicant: (i) "demonstrate[ ] competence in Federal tax return preparation matters by written examination"; (ii) possess a valid PTIN; and (iii) "has not engaged in any conduct that would justify the suspension or disbarment of any practitioner under the provisions of this part."  The competency examination for registered tax-return preparers is similar in function to the examinations required for enrolled agents and enrolled retirement plan agents.  *See* 76 Fed. Reg. at 32,289.  As to the suitability check, the regulations empower the IRS to inquire whether an applicant: (i) had filed all required individual and business tax returns and had paid any federal taxes due; and (ii) had

engaged in disreputable conduct, or conduct that would justify suspension or disbarment. 31 C.F.R. § 10.5(d). The regulations also require completion of a minimum of 15 hours of continuing education during "each registration year." *See* 31 C.F.R. § 10.6(e)(3).[6]

In addition to the competency and ethics regulations, the Secretary of the Treasury also issued regulations requiring all tax-return preparers to obtain a PTIN or another identifying number, as prescribed by the Internal Revenue Service. *See* 26 C.F.R. § 1.6109-2(d) (eff. Sept. 30, 2010). The regulations further specified that, to obtain a PTIN, "a tax return preparer must be an attorney, certified public accountant, enrolled agent, or registered tax return preparer authorized to practice before the Internal Revenue Service under 31 U.S.C. § 330 and the regulations thereunder." *Id.*

---

[6] After the issuance of the regulations in 2011, IRS Notice 2011-6, 2011-3 I.R.B. 315, announced that individuals could prepare tax returns until December 31, 2013, without passing the competency examination or becoming registered return preparers, so long as such individuals obtained a provisional PTIN and paid the PTIN user fee. Although the continuing education requirements took effect in 2012, the IRS extended the time period for satisfying the 2012 requirement until December 31, 2013.

-15-

## C.    The District Court proceedings

On March 13, 2012, Sabina Loving, Elmer Kilian, and John Gambino (together, plaintiffs) filed a complaint for declaratory and injunctive relief, asserting that the tax-return preparer regulations "exceed[ ] the IRS's statutory authority under 31 U.S.C. § 330."  (Doc. 1 at 2.)  Plaintiffs, who are tax-return preparers, alleged that they "would be forced to pay a substantial amount of money in application fees, exam fees, continuing education course fees, as well as potential travel costs, lodging, and meals related to taking the competency exam and continuing education courses."  (*Id*. at 19.)  Two of the plaintiffs indicated that they would rather close their tax-preparation businesses than comply with the regulatory regime.  (*Id*. at 16-18.)

The parties each moved for summary judgment as to whether the Secretary of the Treasury had the statutory authority to regulate the practice of paid tax-return preparers.  (Docs. 12-13.)  Both parties concentrated their arguments on 31 U.S.C. § 330, which grants the Secretary of the Treasury the authority, *inter alia*, to "regulate the practice of representatives of persons before the Department of the Treasury."  31 U.S.C. § 330(a)(1).  Plaintiffs argued that the term

-16-

practice before the Treasury Department did not encompass tax-return preparation, and that the regulations issued by the Secretary of the Treasury thus exceeded the authority granted him by 31 U.S.C. § 330(a)(1). (Doc. 12 at 16-29.) The Government countered that "Congress did not unambiguously define the term 'practice' before the Department of the Treasury or otherwise expressly determine whether the preparation of a tax return constitutes 'practice.'" (Doc. 13 at 15.) The Government further argued that the regulations were not an arbitrary or capricious interpretation of the ambiguous term "practice of representatives," and thus should be upheld as a reasonable construction of the authority conferred on the Secretary by 31 U.S.C. § 330(a)(1). (*Id*. at 16-21.) The Government also argued that the Secretary could issue the tax-return preparer regulations based on his inherent authority to regulate individuals who appear before the Treasury Department. (Doc. 13 at 12-14.)

The District Court issued a declaratory judgment that the regulations were invalid because the Secretary of the Treasury lacked the statutory authority to regulate the practice of return preparers. (JA 9.) In its memorandum opinion, the court noted, however, that

plaintiffs offered "no independent argument for why, if the statute is ambiguous, the IRS's interpretation would be 'arbitrary or capricious in substance, or manifestly contrary to the statute'. . . ."  (JA 18.)

As an initial matter, the District Court held that the Department of the Treasury could not rely on its inherent authority to regulate individuals who practice before it, "[b]ecause 31 U.S.C. § 330 specifically defines the Treasury Department's authority to regulate the people who practice before it."  (JA 18.)  As to that provision, the court acknowledged that 31 U.S.C. § 330(a)(1) gave the Secretary of the Treasury authority to "regulate the practice of representatives" before it, and that that provision did not define what constituted the "practice of representatives."  (JA 20.)  The court nonetheless ruled that 31 U.S.C. § 330(a)(1) "unambiguously foreclosed" the issuance of the tax-return preparer regulations, based on three textual grounds.  (JA 19.)

The District Court first relied on 31 U.S.C. § 330(a)(2)(D), which provides that, before admitting a representative to practice, the Secretary of the Treasury "may . . . require that the representative demonstrate . . . competency to advise and assist persons in presenting their cases."  (JA 20.)  The court concluded that this provision equated

-18-

"practice" to "advising and assisting [in] the presentation of a case," and that because, in the court's view, the preparation of tax returns for submission to the IRS did not involve the presentation of a "case," the term "practice of representatives" before the Treasury Department set out in 31 U.S.C. § 330(a)(1) did not include the preparation of tax returns.  (*Id.*)

The District Court next looked to 31 U.S.C. § 330(b), which grants the Secretary of the Treasury authority to "suspend or disbar from practice before the Department" representatives for certain misconduct, or impose monetary penalties on them.  (JA 21-28.)  The court noted that the Internal Revenue Code (26 U.S.C.) (I.R.C.) provides specific penalties for tax-preparer misconduct.  (JA 22-24.)  The court then stated that "if the 'representatives' that the IRS could penalize under § 330(b) include tax-return preparers, the IRS would be able to punish everything covered by the ten penalties in [the Internal Revenue Code] . . . [which] would trample the specific and tightly controlled penalty scheme."  (JA 23.)

Finally, the court relied on I.R.C. § 7407, which allows the IRS to seek an injunction against a tax-return preparer if the preparer has

9784119.1

-19-

engaged in specified unlawful conduct.  (JA 25-27.)  The court observed

that "if § 330 covers tax-return preparers, the IRS could sidestep every

protection § 7407 affords . . . while effectively obtaining the same

result," by disbarring the tax-return preparer from practice pursuant to

31 U.S.C. § 330(b).  (JA 26.)  The court recognized, however, that "the

IRS's interpretation of § 330 would not render § 7407 surplusage

because § 7407 still offers a different remedy: a judicial injunction

versus IRS disbarment."  (*Id.*)  The court also observed that I.R.C.

§ 7408 "might seem to undercut" its interpretation, as it provides the

IRS with the means to seek an injunction against attorneys and

certified public accountants who are subject to the disbarment

mechanism of 31 U.S.C. § 330(b).  (JA 27.)  Thus, the court

acknowledged that I.R.C. § 7408 "perhaps suggest[s] that this

injunctive remedy remains useful despite the availability of remedies

under § 330(b)."  (*Id.*)

The court explicitly declined to decide whether any of these three

points alone would be dispositive, but instead concluded "that together

the statutory text and context unambiguously foreclose the IRS's

interpretation of 31 U.S.C. § 330."  (JA 28.)

After determining that the issuance of the subject regulations

exceeded the Secretary's authority, the District Court determined that

injunctive relief was appropriate.  In particular, the court noted that

two of the plaintiffs had declared that they would close their businesses

if forced to comply with the new regulations, which, according to the

court, constituted an irreparable injury.  (JA 31.)  The court ruled that

the balance of hardships favored plaintiffs, and that the public interest

would be served because the IRS's regulatory scheme was *ultra vires*.

(*Id*.)

On January 23, 2013, the Government filed a motion in the

District Court for a stay pending appeal.  (Doc. 23.)  Although the court

ruled that the case "raises serious and difficult legal questions"

sufficient to satisfy the Government's showing as to its likelihood of

success on appeal (JA 34), the court nevertheless denied the

Government's motion (JA 38).[7]  The court did modify its injunction,

however, to clarify "that the IRS is not required to suspend its PTIN

program, nor is it required to shut down all of its testing and

_____

[7] As indicated, the Government renewed its motion for a stay in
this Court, which was denied on March 27, 2013.

continuing-education centers; instead, they may remain, but no tax-return preparer may be required to pay testing or continuing-education fees or to complete any testing or continuing education . . . ."  (*Id.*)

The Government now appeals.  (JA 93-94.)

## SUMMARY OF ARGUMENT

Section 330(a)(1) of Title 31, U.S.C., grants the Secretary of the Treasury the authority to "regulate the practice of representatives of persons before the Department of the Treasury."  Pursuant to this grant of authority, the Secretary of the Treasury issued regulations containing competency, continuing education, and ethics requirements for paid tax-return preparers.  The District Court, however, declared the regulations invalid and enjoined their enforcement, holding that 31 U.S.C. § 330(a)(1) did not authorize the Secretary to regulate the practice of tax-return preparers.  That holding is erroneous as a matter of law.

1.    Contrary to the District Court's decision that the tax-return preparer regulations fail the *Chevron* step-one analysis, Congress nowhere has expressed an unambiguous intent to limit the term "practice of representatives  . . . before the Department of the Treasury"

to only those representatives who assist others in presenting their "cases" to the Treasury Department, and to thereby preclude the Secretary from regulating other representatives who prepare tax returns on behalf of other persons for filing with (and review by) the IRS. The concept of "practice" before the IRS is neither defined in 31 U.S.C. § 330 nor otherwise unambiguously delineated by the overall context of that statute.

Although 31 U.S.C. § 330(a)(2)(D) provides the Secretary with the discretionary authority to require that a representative demonstrate, as a condition to being admitted to practice, competency to advise and assist persons in presenting their cases, 31 U.S.C. § 330(a)(2)(C) more broadly equips the Secretary with the authority to require a representative to demonstrate the necessary qualifications to provide valuable service to others. Contrary to the District Court's conclusion, the discretionary authority granted to the Secretary in subsection (D) does not establish an unambiguous intent on the part of Congress to limit the Secretary's regulatory authority to only those representatives who assist others in presenting their cases to the Treasury Department. The District Court's decision ignores the authority granted to the

Secretary in subsection (C) to require, as a condition of practicing before the Treasury Department, that a representative demonstrate that he possesses the necessary qualification to provide "valuable service." Indeed, the District Court's decision renders subsection (C) completely superfluous.

2.    The District Court attempted to bolster its decision by noting that, under the Government's position, tax-return preparers potentially would be subject to monetary sanctions and other penalties under both 31 U.S.C. § 330(b) and various provisions of the Internal Revenue Code (26 U.S.C.).  This possible overlap of sanctions, however, does nothing to cure the inherent ambiguity in the meaning of the term "practice" before the Treasury Department in 31 U.S.C. § 330(a)(1).  The monetary penalties imposed on tax-return preparers under the Internal Revenue Code and the sanctions under 31 U.S.C. § 330(b) serve different tax-administration purposes.  Moreover, even the District Court acknowledged that there was no true overlap between the disbarment remedy available to the Secretary under 31 U.S.C. § 330(b) and the injunctive relief available to him under I.R.C. § 7407, since administrative disbarment is not the same as a judicial injunction.

-24-

3.      There is no question that, if the tax-return preparer

regulations pass muster under the *Chevron* step-one analysis, they

would satisfy the *Chevron* step-two analysis.  The District Court

expressly so stated in its opinion, pointing out that the plaintiffs had

made no independent argument that the regulations were arbitrary or

capricious.

The judgment of the District Court should be reversed.

## ARGUMENT

**The District Court erred as a matter of law in holding
that 31 U.S.C. § 330(a)(1) unambiguously foreclosed
the Secretary of the Treasury from regulating the
practice of tax-return preparers, and, accordingly,
erred in declaring the tax-return preparer regulations
invalid and enjoining their enforcement**

### Standard of review

This Court reviews issues of statutory construction *de novo*.  *See,

e.g., Judicial Watch v. F.B.I.*, 522 F.3d 364, 367 (D.C. Cir. 2008).  "The

decision to grant or deny permanent injunctive relief is an act of

equitable discretion by the district court, reviewable on appeal for abuse

of discretion."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2006).  When evaluating an injunction, however, "[t]o the extent the

district court's decision hinges on questions of law, [ ] this court's review

is essentially *de novo*." *Ark. Dairy Coop. Ass'n, Inc. v. United States Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009) (quotation marks and citations omitted). "'[B]y definition,' a district court 'abuses its discretion when it makes an error of law.'" *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

## A.     Introduction

The sole issue in this case is whether the Secretary of the Treasury has the authority to regulate the practice of tax-return preparers, who are paid by their clients to prepare federal tax returns for submission to, and review by, the IRS.  In 31 U.S.C. § 330(a), Congress granted broad authority to the Secretary of the Treasury to regulate representatives of others that practice before the Department of the Treasury.[8]  Section 330(a) contains two related grants of authority, providing that the Secretary "may":

> (1) regulate the practice of representatives of persons before the Department of the Treasury; and

---

[8] This grant of authority is consistent with the broad power conferred on the Secretary of the Treasury to "prescribe regulations to carry out the duties and powers of the Secretary."  31 U.S.C. § 321(b)(1).

(2) before admitting a representative to practice, require
that the representative demonstrate --

(A) good character;

(B) good reputation;

(C) necessary qualifications to enable the
representative to provide to persons valuable service;
and

(D) competency to advise and assist persons in
presenting their cases.

Although 31 U.S.C. § 330(a)(1) establishes the Secretary's authority to

regulate the practice of representatives before the Treasury

Department, it does not provide any definition of what constitutes

"practice" before the Treasury.

     In accordance with the authority granted in 31 U.S.C. § 330(a)(1),

the Secretary of the Treasury has prescribed regulations "governing the

recognition of attorneys, certified public accountants, enrolled agents,

enrolled retirement plan agents, registered tax return preparers, and

other persons representing taxpayers before the Internal Revenue

Service."  31 C.F.R. § 10.0.  Under the regulations, "practice before the

Internal Revenue Service" includes:

all matters connected with a presentation to the Internal
Revenue Service or any of its officers or employees relating

> to a taxpayer's rights, privileges, or liabilities under laws or
> regulations administered by the Internal Revenue Service.
> Such presentations include, but are not limited to, preparing
> documents; filing documents . . . .

31 C.F.R. § 10.2(a)(4).[9]

As relevant to this case, in June 2011, the Secretary of the

Treasury amended the "rules relating to the authority to practice before

the Internal Revenue Service" and "the duties and restrictions relating

to such practice" to add specific regulations governing the practice of

tax-return preparation. 31 C.F.R. § 10.0. *See* 76 Fed. Reg. at 32,287.

For a registered tax-return preparer, "practice" consists of "preparing

and signing tax returns and claims for refund, and other documents for

submission to the Internal Revenue Service." 31 C.F.R. § 10.3(f)(2). In

addition, the practice of a tax-return preparer also includes the ability

to represent a taxpayer during an IRS examination, if the preparer

signed the tax return or claim for refund under examination. 31 C.F.R.

§ 10.3(f)(3).

---

[9] This definition of "practice before the Internal Revenue Service" is consistent with the previous version of that term, except for a slight punctuation change. *See* 31 C.F.R. § 10.2 (eff. Sept. 26, 2007) ("Such presentations include, but are not limited to, *preparing and filing documents*").

To become a registered tax-return preparer, an applicant has to meet several requirements. First, an applicant must "demonstrate[ ] competence in Federal tax return preparation matters by written examination." 31 C.F.R. § 10.4(c). An applicant also is required to obtain a valid preparer tax identification number (PTIN) from the IRS. *See id.*; 26 C.F.R. § 1.6109-2(d). Further, the applicant is prohibited from engaging "in any conduct that would justify the suspension or disbarment of any practitioner under the provisions of this part." 31 C.F.R. § 10.4(c). To this end, the regulations empower the IRS to inquire whether an applicant: (i) has filed all required individual and business tax returns and has paid all federal taxes due; and (ii) has engaged in disreputable conduct, or conduct that would justify suspension or disbarment. *See* 31 C.F.R. § 10.5(d). Finally, the regulations require completion of a minimum of 15 hours of continuing education during "each registration year." *See* 31 C.F.R. § 10.6(e)(3).

## B.    The District Court erred in holding that the tax-return preparer regulations are invalid

The District Court erred as a matter of law when it held that the Secretary of the Treasury did not have the authority to regulate the practice of tax-return preparers. Contrary to the District Court's

conclusion, the tax-return preparer regulations satisfy the *Chevron* step-one analysis. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Mayo Found. for Med. Educ. and Research v. United States*, --- U.S. ---, 131 S. Ct. 704 (2011). Under *Chevron*, unless Congress has spoken to the precise issue presented, an agency's regulation is valid if the regulation fills a statutory gap, or defines a term, in a reasonable fashion. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *National Cable & Telecomms. Ass'n v. Brand X Internet Svcs.*, 545 U.S. 967, 980 (2005). As demonstrated below, the critical statutory term in 31 U.S.C. § 330(a)(1), *i.e.*, "practice of representatives of persons before the Department of the Treasury" is ambiguous and therefore is a proper subject for interpretation by the Secretary of the Treasury. And, as further shown, the Secretary's interpretation of that term as including the practice of tax-return preparers is a permissible construction of the statute.[10]

---

[10] The District Court made clear (JA 18) that, if it had agreed with

(continued…)

1.   **The tax-return preparer regulations satisfy *Chevron* step one**

    a.   **The term "practice of representatives of persons before the Department of the Treasury" is ambiguous**

Contrary to the decision of the District Court, the tax-return

preparer regulations satisfy the first prong of the *Chevron* analysis

because Congress has not directly spoken to the precise question at

issue. *See Chevron*, 467 U.S. at 842. "In *Chevron*, this Court held that

---

(…continued)
the Government that the term "practice of representatives before the Department of the Treasury" was ambiguous, it would have concluded that the Secretary's interpretation of that term as including tax-return preparers was a permissible one under *Chevron* step two. "The battle here will be fought and won on *Chevron* step one; plaintiffs offer no independent argument for why, if the statute is ambiguous, the IRS's interpretation would be 'arbitrary or capricious in substance, or manifestly contrary to the statute' under *Chevron* step two." (*Ibid.*) The *Chevron* step-two analysis involves a fact-based application of various factors germane to the regulations in issue. *See, e.g., Brand X,* 545 U.S. at 997-1002; *Petit v. United States Dep't of Educ.*, 675 F.3d 769, 785-90 (D.C. Cir. 2012). Accordingly, plaintiffs, in failing to raise in the District Court any independent argument that the tax-return preparer regulations are invalid under *Chevron* step two, have waived any argument in this regard. *See, e.g., Artis v. Bernanke*, 630 F.3d 1031, 1038 (D.C. Cir. 2011); *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1084 (D.C. Cir. 1984). Nevertheless, for the sake of completeness, we have included herein, *infra*, pp. 45-47, a brief explanation of why the regulations easily pass muster under *Chevron* step two.

ambiguities in statutes within an agency's jurisdiction to administer are

delegations of authority to the agency to fill the statutory gap in

reasonable fashion." *Brand X*, 545 U.S. at 980.  There is no question, of

course, that, "[i]f the intent of Congress is clear, that is the end of the

matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at

842-43.  That, however, is not the case here.  Nowhere in 31 U.S.C.

§ 330(a) did Congress define the term "practice of representatives before

the Department of the Treasury."  Nor, contrary to the holding of the

District Court (JA 18-28), did Congress otherwise demonstrate, by

means of plain and unambiguous statutory language, its intent to limit

the meaning of that term to individuals who assist others in presenting

their "cases" to the Treasury Department, and to thereby exclude those

representatives who prepare tax returns on behalf of others for

submission to (and review by) the IRS.[11]

---

[11]  There can be no serious dispute that paid tax-return preparers
are "representatives of persons" and that practice before the Treasury
Department includes practice before the IRS.  Thus, the only question
here is whether tax-return preparers are "practicing" before the IRS in
preparing returns for submission to, and review by, that agency.

"At this first step of the *Chevron* analysis we 'employ[ ] traditional tools of statutory construction,' *Chevron* at 843 n. 9, 104 S.Ct. 2778, to determine whether Congress has 'unambiguously foreclosed the agency's statutory interpretation.' *Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 35 (D.C. Cir. 2009)." *Village of Barrington, Illinois v. Surface Transp. Bd.*, 636 F.3d 650, 659 (D.C. Cir. 2011). "To determine whether the meaning of a statutory provision is plain, the court's analysis begins with 'the most traditional tool of statutory construction, [reading] the text itself.'" *Wolf Run Mining Co. v. Fed. Mine Safety and Health Review Comm'n*, 659 F.3d 1197, 1200 (D.C. Cir. 2011) (quoting *City of Tacoma v. FERC,* 331 F.3d 106, 114 (D.C. Cir. 2003)). *See also Roberts v. Sea-Land Svcs., Inc.*, --- U.S. ---, 132 S. Ct. 1350, 1356 (2012). "In deciding whether the text resolves the meaning of a statutory provision, the court considers 'the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Wolf Run*, 659 F.3d at 1200 (quoting *City of Tacoma*, 331 F.3d 114). *See also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).

In the instant case, neither the actual language nor the overall context of 31 U.S.C. § 330(a) unambiguously forecloses the Secretary's

interpretation that the term "practice of representatives of persons before the Department of the Treasury" includes the practice of tax-return preparers.  A statutory provision is ambiguous for purposes of the *Chevron* analysis where it can "support two plausible interpretations."  *Am. Fed'n of Labor and Congress of Indus. Orgs. v. FEC*, 333 F.3d 168, 174 (D.C. Cir. 2003).  *See also Brand X,* 545 U.S. at 989 ("[W]here a statute's plain terms admit of two or more reasonable ordinary usages, the [agency's] choice of one of them is entitled to deference."); *United States v. Nofziger,* 878 F.2d 442, 446–47 (D.C. Cir. 1989).  Although Congress in 31 U.S.C. § 330(a)(1) granted the Secretary of the Treasury the authority to "regulate the practice of representatives of persons before the Department of the Treasury," it nowhere defined the scope of the term "practice" before the Treasury Department.  Nor does the term have a well-established meaning that would preclude it from reasonably being construed by the Secretary to include the preparation of tax returns for others for submission to, and review by, the IRS.  Indeed, even the District Court agreed (JA 18) that, as an abstract matter, the term "practice of representatives of persons

before the Department of the Treasury" reasonably could be construed
by the Secretary of the Treasury to encompass tax-return preparers.

Moreover, the provisions of 31 U.S.C. § 330(a)(2) belie the District
Court's decision that Congress has unambiguously foreclosed the
Secretary of the Treasury from regulating the practice of return
preparers. Section 330(a)(2) provides that before "admitting a
representative to practice," the Secretary of the Treasury "may" require,
*inter alia*, that the representative demonstrate "necessary qualifications
to enable the representative to provide to persons valuable service." 31
U.S.C. § 330(a)(2)(C). The regulatory program at issue was created for
just that end: to ensure that tax-return preparers have the necessary
competency and ethics to provide their clients "valuable service," *i.e.*,
the preparation of tax returns that accurately apply the tax law. The
Secretary's authority in 31 U.S.C. § 330(a)(2)(C) to require a
representative to demonstrate that he (or she) has the necessary
qualifications to provide persons valuable service, before allowing such
representative to practice before the Treasury Department, confirms
that Congress did not express an unambiguous intent to limit the term
"practice of representatives before the Treasury Department" in 31

U.S.C. § 330(a)(1) to only those representatives who assist others in

presenting their *cases* to the Department.  On the contrary, 31 U.S.C.

§ 330(a)(2)(C) demonstrates that Congress regarded the term practice

before the Treasury Department as also including representatives

providing other valuable services.

> **b.    The District Court erroneously held that other statutory provisions cured the inherent ambiguity of the term "practice of representatives" in 31 U.S.C. § 330(a)(1)**

The District Court held that, although the term "practice of

representatives . . . before the Department of the Treasury" in 31 U.S.C.

§ 330(a)(1) was not defined therein, the term nevertheless had a plain

and unambiguous meaning that did not include the preparation of tax

returns for other persons for submission to (and review by) the IRS.

The court based its decision on other provisions in 31 U.S.C. § 330 and

in the Internal Revenue Code (26 U.S.C.).  The court ruled in this

regard that there were three textual grounds that supported this

conclusion, but it did not "decid[e] whether any of these three textual

points alone would be dispositive."  (JA 28.)  Contrary to the District

Court's decision, nothing in the terms or context of 31 U.S.C. § 330, or

in the provisions of the Internal Revenue Code pertaining to tax-return

preparers, demonstrates that Congress addressed the precise question at issue and manifested, by means of plain and unambiguous statutory language, its intent to limit the term "practice of representatives" before the Treasury Department in 31 U.S.C. § 330(a)(1) to only those individuals who assist and aid others in the presentation of their cases.

       i.     The District Court based its decision primarily on 31 U.S.C. § 330(a)(2), which, as indicated, grants the Secretary of the Treasury the discretionary authority, before admitting a representative to practice, to require that the representative make certain showings as to his or her fitness to practice.  (JA 20-21.)  In particular, the court concluded that 31 U.S.C. § 330(a)(2)(D), "provides critical guidance on what the term ["practice of representatives"] means," by "tell[ing] us what the representatives do – what their 'practice' is, in the words of both subsections: representatives 'advise and assist persons in presenting their cases.'"  (JA 20.)

      Section 330(a)(2), however, does not supply a definition for the term "practice of representatives . . . before the Department of the Treasury" in 31 U.S.C. § 330(a)(1).  Rather, it grants the Secretary of the Treasury the discretionary authority, before admitting a

representative to practice, to require that the representative make certain showings as to his fitness to practice. However, by describing in some detail the types of regulatory requirements and sanctions that the Secretary might adopt, Congress did not imply that *every* aspect of the statutory authorization would be germane to *every* covered representative.

The District Court thus was far off base when it concluded that 31 U.S.C. § 330(a)(2)(D) established the contours of the term "practice of representatives." Although that provision allows the Secretary, if he chooses, to require a representative to demonstrate "competency to advise and assist persons in presenting their cases," this authority does not establish that Congress (i) addressed the precise question whether "practice of representatives" before the Treasury Department includes the practice of individuals who prepare tax returns for submission by their clients to the IRS, and (ii) answered that question in the negative through plain and unambiguous language. On the contrary, 31 U.S.C. § 330(a)(2)(D) merely equips the Secretary with the authority to inquire into a representative's competency to assist and advise in the presentation of cases – as to those representatives actually providing

-38-

those particular services.  But the mere existence of this authority does

not delineate the scope of the term "practice of representatives" before

the Treasury Department set forth in 31 U.S.C. § 330(a)(1), and hence

does not resolve whether that term may be permissibly construed by the

Secretary as including paid tax-return preparers.

Indeed, the District Court's decision that only those

representatives who advise and assist clients in the presentation of

their cases are "practicing" within the meaning of 31 U.S.C. § 330(a)(1)

renders 31 U.S.C. § 330(a)(2)(C) completely meaningless.  If, as the

court concluded (JA 20), the practice of representatives consists

exclusively of advising and assisting clients in the presentation of their

cases, the separate authority given to the Secretary in 31 U.S.C.

§ 330(a)(2)(C) to require that a representative demonstrate necessary

qualifications to provide "valuable service" would be rendered

completely superfluous because 31 U.S.C. § 330(a)(2)(D), in and of itself,

grants the Secretary authority to require that a representative

demonstrate competency to advise and assist persons in presenting

their cases.  "A cardinal principle of interpretation requires us to

construe a statute so that no provision is rendered inoperative or

superfluous, void or insignificant." *Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Labor Relations Bd.*, 564 F.3d 469, 472 (D.C. Cir. 2009) (quoting *Asiana Airlines v. FAA,* 134 F.3d 393, 398 (D.C. Cir. 1998) (internal quotations omitted)).  The District Court here, in its haste to find plain meaning where none exists, not only entirely overlooked 31 U.S.C. § 330(a)(2)(C), but issued a decision that renders that provision meaningless.

ii.     The District Court attempted to bolster its conclusion that the critical language of 31 U.S.C. § 330(a)(1) is plain and unambiguous by pointing out that, if the term "practice of representatives" before the Treasury Department includes the practice of tax-return preparers, there would be an overlap between the provisions of 31 U.S.C. § 330(b) and certain provisions in the Internal Revenue Code (26 U.S.C.) that pertain to tax-return preparers.  Section 330(b) provides that the Secretary may suspend or disbar from practice, censure, or impose a monetary penalty on a representative who: (i) "is incompetent"; (ii) "is disreputable"; (iii) "violates regulations prescribed under this section"; or (iv) "with intent to defraud, willfully or knowingly misleads or threatens the person being represented or a prospective person to be

-40-

represented." The court pointed out that (JA 23-24), under the Government's position, tax-return preparers would be subject to a host of penalties under 31 U.S.C. § 330(b) in addition to the specific penalties imposed on tax-return preparers under the Code. *See* I.R.C. §§ 6694, 6695, 6713, 7216. The court also stated that I.R.C. § 6103(k)(5) confirmed its conclusion, as that provision did not include 31 U.S.C. § 330 in a list of tax-return preparer penalties reportable to state and local agencies. (JA 24.)

    This possible overlapping of penalties, however, does not support the District Court's conclusion that, under the plain language of 31 U.S.C. § 330(a)(1), the term "practice of representatives" before the Treasury Department does not include the preparation of tax returns on behalf of clients for submission to the IRS. The penalties imposed by 31 U.S.C. § 330(b) provide a fitness-to-practice framework for practitioners analogous to a court's disciplinary committee or a state's licensing authority. On the other hand, the Internal Revenue Code penalty provisions are case-specific penalties that encourage voluntary compliance and act as a sanction for conduct that has already occurred. In any event, "[r]edundancies across statutes are not unusual events,"

-41-

and where statutes overlap, so long as there is no "positive repugnancy between the two laws," courts "must give effect to both." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253 (1992) (quotation omitted); *see also Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129 (1995). Accordingly, any redundancy between the penalty provisions of 31 U.S.C. § 330 and those imposed on tax-return preparers under the Internal Revenue Code in no way supports the District Court's application of the *Chevron* step-one analysis.

Nor does I.R.C. § 6103(k)(5) support a different conclusion. As a general matter, I.R.C. § 6103(a) provides that "returns and return information shall be confidential," and that such information shall not be disclosed except as provided in other sections of I.R.C. § 6103. Return information includes the information gathered by the Internal Revenue Service "with respect to a return or with respect to the determination of the existence, or possible existence, of liability . . . of any person *under this title* for any tax, penalty, interest, . . . ." I.R.C. § 6103(b)(2)(A) (emphasis ours). Section 6103(k) sets forth various exceptions to this general rule of non-disclosure, including allowing the disclosure of "[t]axpayer identity information with respect to any tax

return preparer, and information as to whether or not any penalty has

been assessed against such tax return preparer under section 6694,

6695, or 7216," to a state or local agency charged with licensing,

registering, or regulating tax-return preparers.  I.R.C. § 6103(k)(5).

Penalties imposed under 31 U.S.C. § 330(b), however, do not arise

"under this title," *i.e.*, Title 26, the Internal Revenue Code, and,

accordingly, information regarding the imposition of such penalties does

not constitute "return information" under I.R.C. § 6103(b)(2)(A), subject

to the confidentiality requirement of I.R.C. § 6103(a).  Indeed, penalties

under Title 31 are made publicly available once they are final.  *See* 31

C.F.R. §§ 10.72 and 10.80.  Thus, it is wholly unsurprising that I.R.C.

§ 6103(k)(5) does not reference 31 U.S.C. § 330(b) since the imposition of

penalties under the latter provision is not return information in the

first place.

      iii.    The District Court also erroneously relied on what it

considered to be an impermissible overlap, under the Government's

position, between 31 U.S.C. § 330(b), which, as explained above,

provides for penalties including disbarment from practice, and I.R.C.

§ 7407, which allows the IRS to seek an injunction against tax-return

preparers who engage in certain misconduct.  (JA 25-27.)  The District

Court stated in this regard that, "if § 330 covers tax-return preparers,

the IRS could sidestep every protection § 7407 affords – judicial review,

the demanding standards for the extraordinary remedy of an injunction,

and the elevated hurdle for enjoining preparation of tax returns

(instead of further violation) – while effectively obtaining the same

result" because "§ 330(b) allows the Treasury Department to 'disbar

from practice before the Department' a 'representative' who engages in

the conduct listed in § 330(b)."  (JA 26.)

The District Court's analysis again is misconceived.  The

administrative disbarment remedy offered by 31 U.S.C. § 330(b) is not

the same as a judicial injunction under I.R.C. § 7407.  Indeed, as the

court itself subsequently acknowledged in its opinion, "the IRS's

interpretation of § 330 would not render § 7407 surplusage because

§ 7407 still offers a different remedy: a judicial injunction versus IRS

disbarment."  (JA 26.)  This conclusion is confirmed by I.R.C. § 7408,

which provides the Secretary with authority to seek an injunction

against any person from engaging in "specified conduct," which

expressly includes the "violation of any requirement under regulations

issued under section 330 of title 31, United States Code," I.R.C.

§ 7408(c)(2).  That Congress in I.R.C. § 7408 expressly authorized the

Secretary to seek an injunction against an individual that is subject to

penalty under 31 U.S.C. § 330 wholly undermines the District Court's

attempt to find support for its decision from the overlap, under the

Government's position, of the penalty provisions of 31 U.S.C. § 330 and

those set forth in the Internal Revenue Code.  Indeed, the District Court

itself acknowledged in its opinion (JA 27), that Congress has provided

for both injunctive and disbarment "remedies against the same people"

in I.R.C. § 7408 and 31 U.S.C. § 330(b), "suggesting that this injunctive

remedy remains useful despite the availability of remedies under

§ 330(b)."  This intentional interplay between I.R.C. § 7408 and 31

U.S.C. § 330(b) confirms the District Court's error in attempting to

support its decision on the basis of what it perceived to be an

impermissible overlap, under the Government's position, between the

provisions of 31 U.S.C. § 330 and the provisions in the Internal Revenue

Code pertaining to tax-return preparers.

     In sum, the tax-return preparer regulations pass muster under

the *Chevron* step-one analysis because nowhere did Congress express

its unambiguous intent to limit the meaning of the term "practice of representatives of others before the Department of the Treasury" in 31 U.S.C. § 330(a)(1) to only those representatives who aid and assist others in the presentation of their cases before the Treasury.  On the contrary, Congress was silent as to whether the inherently ambiguous term "practice" before the Treasury Department includes the practice of tax-return preparers, and consequently, the Secretary was authorized to issue regulations resolving that ambiguity.  *See, e.g., Brand X*, 545 U.S. at 980; *Am. Fed'n of Labor*, 333 F.3d at 173.

> **2.    The tax-return preparer regulations are a reasonable construction of the authority granted to the Secretary by 31 U.S.C. § 330(a)(1) that satisfies *Chevron* step two**

As the Supreme Court held in *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  467 U.S. at 843; *see Mayo*, 131 S. Ct. at 711.  "At step two, we focus on 'whether the [agency] has reasonably explained how the permissible interpretation it chose is 'rationally related to the goals of' the statute.'"  *Petit*, 675 F.3d at 785 (quoting *Village of Barrington, Ill.*, 636 F.3d at 665) (internal citation omitted).

-46-

The District Court itself pointed out (JA 18) that plaintiffs "offer no independent argument for why, if the statute is ambiguous, the IRS's interpretation would be 'arbitrary or capricious in substance, or manifestly contrary to the statute' under *Chevron* step two." Thus, as the District Court recognized, the concept of practice before the Treasury Department reasonably may be construed as including the practice of representatives who prepare tax returns on behalf of others for submission to, and review by, the IRS under *Chevron* step two. Nor is there any question that the tax-return preparer regulations rationally implement the goals of 31 U.S.C. § 330(a), *viz.*, to ensure that representatives who practice before the Treasury Department are ethical and possess the necessary qualifications to provide to others valuable service. *See* 31 U.S.C. § 330(a)(2)(C). The regulations resulted from a comprehensive review by the IRS of the tax-return-preparer industry, which produced "recommendations to ensure uniform high ethical standards of conduct for all tax return preparers and to increase taxpayer compliance." 76 Fed. Reg. at 32,286. "The primary benefit anticipated from these regulations is that they will improve the accuracy, completeness, and timeliness of tax returns prepared by tax return

preparers." *Id.* at 32,294.  The regulations, which include a competency test, continuing-education requirements, and a tax-compliance and suitability check, plainly are a rational means of achieving the statutory goals.

## CONCLUSION

The judgment of the District Court should be reversed.

Respectfully submitted,

KATHRYN KENEALLY
  *Assistant Attorney General*

TAMARA W. ASHFORD
  *Principal Deputy Assistant Attorney General*

/s/ PATRICK J. URDA
GILBERT S. ROTHENBERG          (202) 514-3361
RICHARD FARBER                 (202) 514-2959
PATRICK J. URDA                (202) 307-0201
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel*:
RONALD C. MACHEN JR.
  *United States Attorney*

MARCH 2013

-48-

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]   this brief contains 9,115 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]   this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook, or

[ ]   this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].


(s) /s/ Patrick J. Urda
Attorney for the Appellants

Dated:  March 29, 2013

9784119.1

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature ___/s/ Patrick J. Urda

-50-

# ADDENDUM

## 31 U.S.C. § 330. Practice before the Department

(a) Subject to section 500 of title 5, the Secretary of the Treasury may--

> (1) regulate the practice of representatives of persons before the Department of the Treasury; and

> (2) before admitting a representative to practice, require that the representative demonstrate—

>> (A) good character;

>> (B) good reputation;

>> (C) necessary qualifications to enable the representative to provide to persons valuable service; and

>> (D) competency to advise and assist persons in presenting their cases.

(b) After notice and opportunity for a proceeding, the Secretary may suspend or disbar from practice before the Department, or censure, a representative who--

> (1) is incompetent;

> (2) is disreputable;

> (3) violates regulations prescribed under this section; or

> (4) with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented.

9784119.1

The Secretary may impose a monetary penalty on any representative described in the preceding sentence. If the representative was acting on behalf of an employer or any firm or other entity in connection with the conduct giving rise to such penalty, the Secretary may impose a monetary penalty on such employer, firm, or entity if it knew, or reasonably should have known, of such conduct. Such penalty shall not exceed the gross income derived (or to be derived) from the conduct giving rise to the penalty and may be in addition to, or in lieu of, any suspension, disbarment, or censure of the representative.

* * *

## 31 C.F.R.:

### § 10.2 Definitions.

(a) As used in this part, except where the text provides otherwise--

* * *

(4) Practice before the Internal Revenue Service comprehends all matters connected with a presentation to the Internal Revenue Service or any of its officers or employees relating to a taxpayer's rights, privileges, or liabilities under laws or regulations administered by the Internal Revenue Service. Such presentations include, but are not limited to, preparing documents; filing documents; corresponding and communicating with the Internal Revenue Service; rendering written advice with respect to any entity, transaction, plan or arrangement, or other plan or arrangement having a potential for tax avoidance or evasion; and representing a client at conferences, hearings, and meetings.

(5) Practitioner means any individual described in paragraphs (a), (b), (c), (d), (e), or (f) of § 10.3.

* * *

(b) Effective/applicability date. This section is applicable beginning August 2, 2011.

## § 10.3 Who may practice.

* * *

(f) Registered tax return preparers. (1) Any individual who is designated as a registered tax return preparer pursuant to § 10.4(c) of this part who is not currently under suspension or disbarment from practice before the Internal Revenue Service may practice before the Internal Revenue Service.

(2) Practice as a registered tax return preparer is limited to preparing and signing tax returns and claims for refund, and other documents for submission to the Internal Revenue Service. A registered tax return preparer may prepare all or substantially all of a tax return or claim for refund of tax. The Internal Revenue Service will prescribe by forms, instructions, or other appropriate guidance the tax returns and claims for refund that a registered tax return preparer may prepare and sign.

(3) A registered tax return preparer may represent taxpayers before revenue agents, customer service representatives, or similar officers and employees of the Internal Revenue Service (including the Taxpayer Advocate Service) during an examination if the registered tax return preparer signed the tax return or claim for refund for the taxable year or period under examination. Unless otherwise prescribed by regulation or notice, this right does not permit such

-53-

individual to represent the taxpayer, regardless of the circumstances requiring representation, before appeals officers, revenue officers, Counsel or similar officers or employees of the Internal Revenue Service or the Treasury Department. A registered tax return preparer's authorization to practice under this part also does not include the authority to provide tax advice to a client or another person except as necessary to prepare a tax return, claim for refund, or other document intended to be submitted to the Internal Revenue Service.

(4) An individual who practices before the Internal Revenue Service pursuant to paragraph (f)(1) of this section is subject to the provisions of this part in the same manner as attorneys, certified public accountants, enrolled agents, enrolled retirement plan agents, and enrolled actuaries.

(g) Others. Any individual qualifying under paragraph (d) of § 10.5 or § 10.7 is eligible to practice before the Internal Revenue Service to the extent provided in those sections.

* * *

(j) Effective/applicability date. This section is generally applicable beginning August 2, 2011.

## § 10.4 Eligibility to become an enrolled agent, enrolled retirement plan agent, or registered tax return preparer.

* * *

(c) Designation as a registered tax return preparer. The Commissioner, or delegate, may designate an individual eighteen years of age or older as a registered tax return preparer provided an applicant demonstrates competence in Federal tax return preparation matters by written examination administered by, or administered under the oversight of, the Internal Revenue Service, or otherwise

-54-

meets the requisite standards prescribed by the Internal Revenue Service, possesses a current or otherwise valid preparer tax identification number or other prescribed identifying number, and has not engaged in any conduct that would justify the suspension or disbarment of any practitioner under the provisions of this part.

* * *

(f) Effective/applicability date. This section is applicable beginning August 2, 2011.

## § 10.5 Application to become an enrolled agent, enrolled retirement plan agent, or registered tax return preparer.

(a) Form; address. An applicant to become an enrolled agent, enrolled retirement plan agent, or registered tax return preparer must apply as required by forms or procedures established and published by the Internal Revenue Service, including proper execution of required forms under oath or affirmation. The address on the application will be the address under which a successful applicant is enrolled or registered and is the address to which all correspondence concerning enrollment or registration will be sent.

(b) Fee. A reasonable nonrefundable fee may be charged for each application to become an enrolled agent, enrolled retirement plan agent, or registered tax return preparer. See 26 CFR part 300.

(c) Additional information; examination. The Internal Revenue Service may require the applicant, as a condition to consideration of an application, to file additional information and to submit to any written or oral examination under oath or otherwise. Upon the applicant's written request, the Internal Revenue Service will afford the applicant the opportunity to be heard with respect to the application.

(d) Compliance and suitability checks. (1) As a condition to consideration of an application, the Internal Revenue Service

9784119.1

may conduct a Federal tax compliance check and suitability check. The tax compliance check will be limited to an inquiry regarding whether an applicant has filed all required individual or business tax returns and whether the applicant has failed to pay, or make proper arrangements with the Internal Revenue Service for payment of, any Federal tax debts. The suitability check will be limited to an inquiry regarding whether an applicant has engaged in any conduct that would justify suspension or disbarment of any practitioner under the provisions of this part on the date the application is submitted, including whether the applicant has engaged in disreputable conduct as defined in § 10.51. The application will be denied only if the results of the compliance or suitability check are sufficient to establish that the practitioner engaged in conduct subject to sanctions under §§ 10.51and 10.52.

> (2) If the applicant does not pass the tax compliance or suitability check, the applicant will not be issued an enrollment or registration card or certificate pursuant to§ 10.6(b) of this part. An applicant who is initially denied enrollment or registration for failure to pass a tax compliance check may reapply after the initial denial if the applicant becomes current with respect to the applicant's tax liabilities.

(e) Temporary recognition. On receipt of a properly executed application, the Commissioner, or delegate, may grant the applicant temporary recognition to practice pending a determination as to whether status as an enrolled agent, enrolled retirement plan agent, or registered tax return preparer should be granted. Temporary recognition will be granted only in unusual circumstances and it will not be granted, in any circumstance, if the application is not regular on its face, if the information stated in the application, if true, is not sufficient to warrant granting the application to practice, or the Commissioner, or delegate, has information indicating that the statements in the application

are untrue or that the applicant would not otherwise qualify to become an enrolled agent, enrolled retirement plan agent, or registered tax return preparer. Issuance of temporary recognition does not constitute either a designation or a finding of eligibility as an enrolled agent, enrolled retirement plan agent, or registered tax return preparer, and the temporary recognition may be withdrawn at any time.

(f) Protest of application denial. The applicant will be informed in writing as to the reason(s) for any denial of an application. The applicant may, within 30 days after receipt of the notice of denial of the application, file a written protest of the denial as prescribed by the Internal Revenue Service in forms, guidance, or other appropriate guidance. A protest under this section is not governed by subpart D of this part.

(g) Effective/applicability date. This section is applicable to applications received on or after August 2, 2011.

## § 10.6 Term and renewal of status as an enrolled agent, enrolled retirement plan agent, or registered tax return preparer.

(a) Term. Each individual authorized to practice before the Internal Revenue Service as an enrolled agent, enrolled retirement plan agent, or registered tax return preparer will be accorded active enrollment or registration status subject to renewal of enrollment or registration as provided in this part.

* * *

(d) Renewal--(1) In general. Enrolled agents, enrolled retirement plan agents, and registered tax return preparers must renew their status with the Internal Revenue Service to maintain eligibility to practice before the Internal Revenue Service. Failure to receive notification from the Internal Revenue Service of the renewal requirement will

-57-

not be justification for the individual's failure to satisfy this requirement.

* * *

(4) Renewal period for registered tax return preparers. Registered tax return preparers must renew their preparer tax identification number and their status as a registered tax return preparer as prescribed by the Internal Revenue Service in forms, instructions, or other appropriate guidance.

* * *

(e) Condition for renewal: continuing education. In order to qualify for renewal as an enrolled agent, enrolled retirement plan agent, or registered tax return preparer, an individual must certify, in the manner prescribed by the Internal Revenue Service, that the individual has satisfied the requisite number of continuing education hours.

(1) Definitions. For purposes of this section—

(i) Enrollment year means January 1 to December 31 of each year of an enrollment cycle.

(ii) Enrollment cycle means the three successive enrollment years preceding the effective date of renewal.

(iii) Registration year means each 12–month period the registered tax return preparer is authorized to practice before the Internal Revenue Service.

(iv) The effective date of renewal is the first day of the fourth month following the close of the

period for renewal described in paragraph (d) of this section.

* * *

(3) Requirements for renewal as a registered tax return preparer. A minimum of 15 hours of continuing education credit, including two hours of ethics or professional conduct, three hours of Federal tax law updates, and 10 hours of Federal tax law topics, must be completed during each registration year.

* * *

(n) Effective/applicability date. This section is applicable to enrollment or registration effective beginning August 2, 2011.

9784119.1